```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                         Newport News Division


- - - - - - - - - - - - - - - - - -
                                    )
  UNITED STATES OF AMERICA,         )
                                    )
  v.                                )    CRIMINAL ACTION NO.
                                    )    4:24mj45
  JAMAL SHIELDS,                    )
                                    )
            Defendant.              )
                                    )
- - - - - - - - - - - - - - - - - -


                  TRANSCRIPT OF PROCEEDINGS

                      (Preliminary hearing)

                     Newport News, Virginia

                         July 25, 2024



BEFORE:
            THE HONORABLE DOUGLAS E. MILLER
            United States Magistrate Judge


APPEARANCES:


            UNITED STATES ATTORNEY'S OFFICE
            By:  Therese O'Brien
                 Assistant United States Attorney
                 Counsel for the United States


            FEDERAL PUBLIC DEFENDER'S OFFICE
            By:  Sean Mitchell
                 Assistant Federal Public Defender
                 Counsel for the Defendant
```

JODY A. STEWART, Official Court Reporter

```
 1                (Hearing commenced at 2:49 p.m.)
 2                THE CLERK:  United States versus Jamal Shields,
 3     4:24mj45.
 4                Is the government ready, Ms. O'Brien?
 5                MS. O'BRIEN:  The Government is ready.
 6                THE CLERK:  Is the defendant ready, Mr. Mitchell?
 7                MR. MITCHELL:  Defense is ready.  Thank you.
 8                THE COURT:  All right.  And this is Mr. Shields?
 9                THE DEFENDANT:  Yes, sir.
10                THE COURT:  Good afternoon, Mr. Shields.
11                THE DEFENDANT:  Good afternoon.
12                THE COURT:  All right.  It's my understanding
13     Mr. Shields was bonded earlier, and because no preliminary
14     has been held, we continued it till today.  So we are, I
15     assume, prepared to go forward with the preliminary hearing.
16     Are we still going forward today, Mr. Mitchell?
17                MR. MITCHELL:  We are, Your Honor.
18                THE COURT:  All right.  You all can have a seat.
19                Ms. O'Brien, do you have a witness?
20                MS. O'BRIEN:  I do, Your Honor.  The United States
21     calls Postal Inspector Keith Moore of the United States
22     Postal Inspection Service as our witness.
23                THE COURT:  Inspector Moore, would you please come
24     forward and be sworn.
25                (Witness was sworn.)
```

```
 1        KEITH MOORE, called by the Government, having been
 2   first duly sworn, was examined and testified as follows:
 3                       DIRECT EXAMINATION
 4   BY MS. O'BRIEN:
 5   Q.  Good afternoon, sir.
 6   A.  Good afternoon.
 7   Q.  Can you please tell us your name and spell your last name
 8   for the record?
 9   A.  Yes.  A U.S. Postal Inspector Keith Moore.  That's
10   M-o-o-r-e.
11   Q.  And, Inspector Moore, how are you employed?
12   A.  I am a United States Postal Inspector.
13   Q.  And are you one of the postal inspectors for the
14   government's investigation of Jamal Shields and other
15   individuals?
16   A.  That is correct.
17   Q.  And did you prepare an affidavit in support of the
18   criminal complaint charging Mr. Shields with theft or receipt
19   of stolen mail?
20   A.  Yes.
21   Q.  And did you review that affidavit in preparation for
22   today's hearing?
23   A.  I did.
24   Q.  Is the information contained in that affidavit in support
25   of the criminal complaint true and correct, to the best of
```

```
 1   your knowledge?
 2   A.  It is.
 3   Q.  And for purposes of today's hearing, do you adopt the
 4   affidavit as your testimony as to probable cause?
 5   A.  Yes.
 6           MS. O'BRIEN:  At this time, if there is no
 7   objection, I'd like to move Inspector Moore's affidavit into
 8   evidence as Government's Exhibit 1.
 9           MR. MITCHELL:  No objection, Your Honor.
10           THE COURT:  Okay.  All right.  It will be admitted.
11   I do already have a copy.
12           (Government's Exhibit 1 received in evidence.)
13           MS. O'BRIEN:  I have no further questions, Your
14   Honor.
15           THE COURT:  All right.  Mr. Mitchell.
16           MR. MITCHELL:  Thank you, Your Honor.
17                     CROSS-EXAMINATION
18   BY MR. MITCHELL:
19   Q.  Good afternoon, sir.
20   A.  Good afternoon.
21   Q.  Sir, I'm going to refer you to your affidavit that's been
22   introduced and accepted into evidence.  The affidavit says
23   that you read Mr. Shields his *Miranda* rights; is that
24   correct?
25   A.  That is correct.
```

1   Q.  Did you ask him any questions about the alleged offense
2   prior to reading those rights?
3   A.  No.
4   Q.  To your knowledge, did any other law enforcement officers
5   question Mr. Shields before you read him those *Miranda*
6   rights?
7   A.  Not to my knowledge.
8   Q.  And was your interview with Mr. Shields recorded?
9   A.  Yes, audio, no video.
10  Q.  And the entire interview?
11  A.  No.
12  Q.  Would you please explain.
13  A.  Mr. Shields requested that the audio be turned off
14  because he had some statements to make that he did not want
15  to be recorded.
16  Q.  And which portion of his statement was unrecorded?
17  That's not exactly clear from the affidavit.
18  A.  The very end regarding other individuals that might be
19  involved.
20  Q.  And is that information listed here in the affidavit?
21  A.  There's a statement toward the end regarding the cell
22  phone that was referenced after getting consent to open
23  regarding an article that was written back from December of
24  2023.
25  Q.  So that portion is not recorded?

1  A.  That portion is not recorded.
2  Q.  And you used the term "consent."  He consented to that?
3  A.  Yes, he did.
4  Q.  And was that consent reduced to writing?
5  A.  No.
6  Q.  So it was oral consent?
7  A.  Correct.
8  Q.  What words did he use exactly, do you recall?
9  A.  I don't recall specifically what he said.  I recall what
10 I asked.
11 Q.  What did you ask?
12 A.  Which was to verify your statements, do you consent to
13 let us look at the text messages in your cell phone, and the
14 answer was "yes."
15 Q.  And those were your exact words?
16 A.  Yes.
17 Q.  And did Mr. Shields hand you your phone or did you take
18 it from him -- excuse me, hand you his phone or did you take
19 it from him?
20 A.  So he did not have it on his person.  The phone was
21 retrieved from the vehicle after Mr. Shields was apprehended.
22 The state trooper gave me the phone, which I put in front of
23 Mr. Shields.
24 Q.  What's the state trooper's name?
25 A.  I don't know.

1  Q.  Were there more than one state trooper on scene?
2  A.  Correct.  Yes.
3  Q.  But this particular state trooper you don't recall the
4  name?
5  A.  No.
6  Q.  But this state -- this unnamed state trooper retrieved
7  the phone and gave it to you?
8  A.  He might have given it to another state trooper, and then
9  there was a collection of phones that were given to me, yes.
10 Q.  But you were the one that asked for consent --
11 A.  Yes.
12 Q.  -- to look at the phone?
13 A.  Correct.
14 Q.  Sir, how many different law enforcement agencies were
15 involved in the pursuit that you described in the affidavit?
16 A.  From the very beginning, there would have been three,
17 which was the United States Postal Inspection Service,
18 Newport News Police Department, and the Virginia State
19 Police.
20 Q.  The vehicles that were involved in the pursuit of
21 Mr. Shields, were those marked vehicles and were they marked
22 with insignias that said "police," or anything similar?
23 A.  There were some vehicles that were unmarked that just had
24 blue lights in them, and then there were some vehicles that
25 were Virginia State Police marked units.

1  Q. How many marked Virginia State Police units would you
2  say?
3  A. At least two. I wasn't there, so I'm not sure if there
4  was more than two but at least two.
5  Q. Oh, you weren't there?
6  A. For his pursuit, no.
7  Q. So you arrived after the pursuit?
8  A. No, I didn't arrive at the scene when he was arrested. I
9  was at the Newport News north precinct.
10 Q. So you weren't at the scene at all?
11 A. At the beginning when they fled, yes, I was there, but
12 not when he was apprehended, no.
13 Q. So some marked vehicles you added on with the blue
14 lights?
15 A. Yes.
16 Q. Were those blue lights flashing, if you know?
17 A. I was told they were, yes.
18 Q. Who told you that?
19 A. At least one, I guess you could say special agent with
20 the Virginia State Police.
21 Q. And what's that person's name?
22 A. John, and last name I can't remember.
23 Q. Okay. So Virginia State Police John, whose last name you
24 can't remember, told you that one of the vehicles had its
25 lights flashing?

Moore, K. - Cross                                                                9

```
 1   A.  He was the closest to Mr. Shields, and he did have his
 2   lights on, yes.
 3   Q.  Okay.  That information is not in the affidavit, though?
 4   A.  I don't think so, no.
 5   Q.  Okay.  Do you know if the pursuit that we are discussing
 6   was recorded?
 7   A.  I do not think that the unmarked cars had video cameras
 8   in them.  I don't know for sure if the marked units have
 9   video cameras.
10   Q.  How were you dressed?
11   A.  T-shirt and blue jeans.
12   Q.  How were the other law enforcement officers dressed?
13   A.  The state police that were involved in our operation had
14   tactical vests that stated "police" in the front.
15   Q.  And what about the Newport News officers?
16   A.  Also has "police" on the front of their tactical
17   bullet-resistant or bulletproof vests.
18   Q.  Each one of them?
19   A.  Yes.
20           MR. MITCHELL:  Okay.  No further questions.  Thank
21   you.
22           THE COURT:  Ms. O'Brien, did you have anything
23   further for Inspector Moore?
24           MS. O'BRIEN:  I do not, Your Honor.
25           THE COURT:  Just so I'm clear, I think the record
```

1  is clear, you weren't present when Mr. Shields was
2  apprehended, but the interview you discussed, part of which
3  was recorded and part of it not recorded, was that you
4  interviewing Mr. Shields?
5          THE WITNESS:  That is correct.
6          THE COURT:  Okay.  All right.  As a result of my
7  questions, anyone have any other questions?
8          MS. O'BRIEN:  No, Your Honor.
9          MR. MITCHELL:  No, Your Honor.
10         THE COURT:  All right.  Thank you for your
11 testimony, Inspector Moore.  You may have a seat.
12         (Witness excused.)
13         THE COURT:  Any other evidence, Ms. O'Brien?
14         MS. O'BRIEN:  No, Your Honor.
15         THE COURT:  All right.  Did you want to offer any
16 evidence, Mr. Mitchell?
17         MR. MITCHELL:  No, Your Honor.  Thank you.
18         THE COURT:  Do you need to argue the case at all?
19         MR. MITCHELL:  No, Your Honor.  We will submit it
20 at this time.
21         THE COURT:  Okay.  Well, I do think, based on
22 Inspector Moore's testimony and the affidavit as he's
23 described it, there is probable cause to support the offense
24 alleged, so we will hold it over for action by the Grand
25 Jury.

1            Is there anything else we need to accomplish today?
2    Are we going to enter a discovery order or are we waiting
3    for something else to happen?
4            MS. O'BRIEN:  Nothing else, Your Honor.
5            THE COURT:  Okay.  Anything else for you,
6    Mr. Mitchell?
7            MR. MITCHELL:  No, Your Honor.  Thank you.
8            THE COURT:  All right.  Mr. Shields, that concludes
9    today's proceedings.  I'll just take this opportunity to
10   remind you that you are on bond for these charges.  You do
11   have to continue to comply with the conditions of your bond.
12   If you fail to do so, you could have your bond revoked, and
13   you'd have to await trial in custody.  Do you understand
14   this?
15           THE DEFENDANT:  I understand, Your Honor.
16           THE COURT:  All right.  Thanks for being here
17   today.  That's all.
18           (Hearing adjourned at 3:00 p.m.)
19
20
21
22
23
24
25

## CERTIFICATION

I certify that the foregoing is a correct transcript, to the best of my ability, of the court's audio recording of proceedings in the above-entitled matter.

X_____/s/_____x
              Jody A. Stewart
         X_____7-26-2024 _____x
                   Date

JODY A. STEWART, Official Court Reporter